GARDEN CITY SCHOOL DISTRICT *v.*
LABOR MEDIATION BOARD.

1. LABOR RELATIONS—PUBLIC EMPLOYEES—MEDIATION OF LABOR DIS-
PUTES.
   · Invocation of the mediation powers of the labor mediation board,
   so far as petition by public employees is concerned, must be
   by a majority of any given group (CL 1948, § 423.207).

2. SAME—MEDIATION OF LABOR DISPUTES—PUBLIC SCHOOL TEACHERS.
   Public school teachers are "public employees," as that term is
   used in act empowering labor mediation board to mediate
   grievances of groups of public employees (CL 1948, § 423.202).

3. SAME—MEDIATION OF LABOR DISPUTES—PUBLIC SCHOOL TEACHERS
   —JURISDICTION OF LABOR MEDIATION BOARD.
   The provision of school code requiring teacher's contracts to be
   in writing and act prohibiting strikes in public employment
   are construed together as giving the labor mediation board
   jurisdiction to mediate disputes between a board of education
   and its teachers relative to salary and other conditions of
   employment (CL 1948, § 423.201 *et seq.*; CLS 1956, § 340.569).

4. SAME—CONSTRUCTION OF WORD "GRIEVANCES."
   The word "grievances," as used in statute empowering labor
   mediation board to mediate grievances of groups of public
   employees and prohibiting strikes by latter, must be read in
   the statute in its generally accepted sense, rather than as
   defined by usage in some contract cases (CL 1948, § 423.207).

5. SAME—PUBLIC SCHOOL TEACHERS—LABOR MEDIATION BOARD—SUF-
FICIENCY OF PETITION.
   Petition of 101 of 135 teachers employed by plaintiff school
   board, filed with defendant labor mediation board, was properly

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur, Labor § 371.
[2, 3, 7] 31 Am Jur, Labor § 359.
[9] 31 Am Jur, Labor § 368.

found sufficient by the mediation board and the circuit court in school board's suit to enjoin the mediation board from mediating dispute as to salary and other conditions of employment, such dispute being a grievance of which the mediation board has jurisdiction (CL 1948, § 423.207).

6. ADMINISTRATIVE LAW — PETITIONS — SIGNATURES — WITHDRAWAL —JURISDICTION.

Attempted withdrawals from a petition after it has been filed with an administrative agency is ineffective to divest such agency of jurisdiction to act on the petition as filed, where such petition must bear a certain number of signatures, in the absence of statutory authority for such withdrawal.

7. LABOR RELATIONS—LABOR MEDIATION BOARD—MAJORITY OF GROUP OF PETITIONING PUBLIC EMPLOYEES.

Statute requiring labor mediation board to act forthwith upon receipt of a petition signed by a majority of any given group of public employees was presumably enacted in the interest of prompt settlement of the dispute and required that determination of the majority of the group be made as of the date petition was filed (CL 1948, § 423.207).

8. SAME—PUBLIC SCHOOL TEACHERS—SUPERVISORY EMPLOYEES—DETERMINATION OF MAJORITY.

Supervisory employees of board of education were properly excluded from the "group" of teachers by the labor mediation board when making a determination of whether a majority of the group had signed petition filed for mediation of grievances, the unity of interest of the group being the basic notion (CL 1948, § 423.207).

9. SAME—LABOR MEDIATION BOARD—JURISDICTION—REVIEW—DELAY.

Once the jurisdiction of the labor mediation board is established to mediate a labor dispute, the acts and procedures of such board are not generally subject to review in equity, a lapse of almost 2 years between issuance of temporary injunction restraining mediation by the board and ultimate decree after hearing on the merits being noted with disapproval (CL 1948, § 423.201 *et seq.*).

10. COSTS—PUBLIC QUESTION—MEDIATION OF LABOR DISPUTES—PUBLIC SCHOOL TEACHERS—SALARIES.

No costs are allowed on school board's appeal from dismissal of its bill to enjoin labor mediation board from mediating upon petition by 101 of its 135 teachers to the labor mediation board for mediation of salary dispute between the school board and its teachers, public questions being involved (CL 1948, § 423.201 *et seq.*; CLS 1956, § 340.569).

Appeal from Ingham; Hughes (Sam Street), J. Submitted October 16, 1959. (Docket No. 53, Calendar No. 47,933.) Decided November 25, 1959.

Bill by School District of the City of Garden City against the Labor Mediation Board, a State agency, its mediators and agents, to restrain it from mediating dispute involving teachers' salaries and conditions of employment. Bill dismissed. Plaintiff appeals. Affirmed.

*Roscoe O. Bonisteel* and *Roscoe O. Bonisteel, Jr.,* for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *James R. Ramsey,* Assistant Attorney General, for defendants.

*Amicus Curiae:*

*Bailey & Robbins* (*Cyril E. Bailey,* of counsel), in behalf of teachers originally asking mediation.

EDWARDS, J. This is an appeal from a decree of the Ingham circuit court dismissing a bill of complaint filed by appellant Garden City school district. By the dismissal, the court refused to enjoin the Michigan labor mediation board from mediating a salary dispute between the school board and its teachers.

In June, 1955, 101 classroom teachers of the school district of Garden City addressed a petition to the labor mediation board and sought the intervention of the board in a dispute involving "salary and other conditions of employment." The petitioners designated the Garden City Federation of Teachers, Local 999 of the American Federation of Teachers, A. F. of L., as their representatives.

Thereupon the labor mediation board sought certain information from the school district, and sought to arrange a meeting between the parties. The Garden City school district replied, through counsel, by disputing the jurisdiction of the board and the sufficiency of the petition. It also presented the request of 27 teachers, asking that their names be removed from the original petition.

After a hearing, where testimony was presented that there were 135 teachers in the Garden City school district as of April, 1955, the labor mediation board ruled that more than 51% of the Garden City teachers had signed the petition, and further that the board had jurisdiction in the matter.

Thereupon plaintiff and appellant herein, Garden City school district, filed a bill of complaint in Ingham county circuit court reiterating the contentions previously addressed to the board, and seeking to enjoin the board from undertaking mediation in the matter.

The circuit judge who heard the matter summarized the issues accurately thus:

"1. Does the labor mediation board have jurisdiction * * * to mediate disputes relative to salaries and other conditions of employment between a school board and its teachers?

"2. If the answer to this question is 'yes,' then is the petition filed in the matter here involved sufficient to bring the dispute within the jurisdiction of said mediation board?"

The circuit judge answered both questions affirmatively and dismissed the bill of complaint. Plaintiff school district appealed.

We believe that these same issues are presented by this appeal.

The powers of the State labor mediation board were augmented in 1947 by PA 1947, No 336. This

act forbade strikes of public employees, and provided for mediation of disputes involving public employees.

Section 7 of the act cited is invoked by the petitioners in their effort to secure mediation of their dispute. It provides:

"Upon the request of a majority of any given group of public employees evidenced by a petition signed by said majority and delivered to the labor mediation board, or upon request of any public official in charge of such employees, it shall be the duty of the labor mediation board to forthwith mediate the grievances set forth in said petition or notice, and for the purposes of mediating such grievances, the labor mediation board shall exercise the powers and authority conferred upon said board by sections 10 and 11 of Act No 176 of the Public Acts of 1939." CL 1948, § 423.207 (Stat Ann 1950 Rev § 17.455[7].) *

Obviously, in order for petitioners to invoke the mediation powers of the board set forth in section 7, they must be "a majority of any given group of public employees."

Section 2 of the same act (CL 1948, § 423.202 [Stat Ann 1950 Rev § 17.455(2)]) defines "public employee" in a fashion which leaves no doubt in our minds as to legislative intent to include teachers:

"No person holding a position by appointment or employment in the government of the State of Michigan, or in the government of any 1 or more of the political subdivisions thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called a 'public employee,' shall strike."

Public school teachers are certainly persons "holding a position by appointment or employment * * * in the public school service."

---

* See, also, CLS 1954, § 423.25 (Stat Ann 1955 Cum Supp § 17.454 [27]).

Appellant school board contends, however, that the provisions of the school code of 1955 (CLS 1956, § 340.569 [Stat Ann 1959 Rev § 15.3569]), by providing that teachers shall be hired by written contract, denies jurisdiction to the labor mediation board for mediation as to any terms which might be included in such contracts.

The written contract provision was first adopted in 1927, and the legislature was certainly familiar with its requirements when it adopted PA 1947, No 336, which we have quoted. We read these 2 acts together as allowing mediation of salary disputes in advance of the determination of the salary provisions of individual teacher contracts. In our opinion, PA 1947, No 336, plainly gave the labor mediation board jurisdiction to mediate disputes of the nature of this one.

As to the second question bearing on the sufficiency of the petition, the labor mediation board and the circuit judge found that the petition was not prematurely filed, and that the description of the dispute to be mediated as "salary and other conditions of employment" was sufficient to invoke mediation under the act.

Section 7 of PA 1947, No 336, requires no preliminary steps to invoking mediation other than the filing of the petition or request provided therein. Nor does this section require detailing of "the grievances" in the petition. The word "grievance" must be read in the statute in its generally accepted sense, rather than as defined by usage in some contract cases. We know of no grievance more likely to provoke the sort of dispute which the labor mediation board and PA 1947, No 336, are designed to avoid than those concerning wages or salary. We find no statutory language which suggests that the petition is deficient on either score referred to above.

Still bearing on the sufficiency of the petition, appellant contends that effect should have been given by the labor mediation board to the subsequent requests to withdraw 27 names signed to the petition, and to subsequent departures from the Garden City school district of 14 teachers who signed the original petition and to the subsequent hiring of 50 new teachers; and further that supervisory personnel of the school district should be counted in determining the majority of the group.

The labor mediation board heard evidence bearing on these contentions and entered the following opinion and findings of fact:

"It is the unanimous opinion of the State labor mediation board that in determining whether or not a petition contains a majority of a given group, the date on which the petition was filed with the board is the determining factor. In this case it is June 13, 1955.

"On the aforesaid date there were 135 classroom teachers, plus supervisory employees who were certified teachers. This board finds and so rules that supervisory employees, even though they are certified classroom teachers, should not be taken into consideration as part of a given group. It might be added that even though the supervisory employees were included in the given group under this ruling, there are sufficient signatures on the petitions to give this board jurisdiction.

"This board finds and so rules that the names of the 14 teachers who have left the employ of the board of education of the school district of the city of Garden City cannot be withdrawn from the petitions. The grievances complained of existed during their employ, and it could be possible that some of these employees left the employ of the board of education because of those grievances.

"As to the 27 individuals who requested their names withdrawn from the petitions, it is the ruling

of this board that request cannot be granted.   In the first place, the original petitions were signed by a circulator and notarized, and the petitions are valid on their face, while none of the 27 requests were notarized.   If this board were to accede to the request of the 27 individuals to have their names withdrawn from the petition, it would set a precedent whereby every petition filed with this board would be subject to attack.   Instead of processing grievances, as set forth in the petitions, and assisting the parties in settling their grievances, this board would be burdened with the additional duties of ascertaining whether or not misrepresentations were made to signers of the petitions and whether or not misrepresentations were made to people requesting the withdrawal of their names from the petitions.

"The board does not believe that the legislature, in passing PA 1947, No 336, intended that the board conduct such detailed investigations.   It is a well-settled rule of this State that if a petition appears valid on its face, then an administrative agency cannot go beyond the petition itself and inquire as to misrepresentations.

"Therefore, this board finds and so rules that on June 13, 1955, there were 135 individuals in the so-called given group that the petitions filed on June 13, 1955, contained 101 signatures, which is more than the majority required under PA 1947, No 336. The board further rules unanimously that it has jurisdiction in this matter."

The circuit judge adopted the view that, for purposes of determining jurisdiction, the date of filing of the petition was controlling.

When jurisdiction to perform a certain act is vested in a board by the filing of a petition with a certain number of signatures, Michigan has generally held subsequent withdrawals (absent statutory authority therefor) to be ineffective. *Patterson* v. *Mead,* 148 Mich 659; *Koerber* v. *Board of Supervisors of Ionia*

*County,* 155 Mich 677; *Fischer* v. *Board of Supervisors of Washtenaw County,* 156 Mich 1.

More particularly, it may be pointed out that the language of section 7 of the 1947 amendments to the labor mediation act says in part:

"Upon the request of a majority of any given group of public employees evidenced by a petition signed by said majority * * * it shall be the duty of the labor mediation board to *forthwith* mediate the grievances set forth." (Emphasis supplied.)

This language requires immediate action by the board, presumably in the interest of prompt settlement of the dispute. We believe the interpretation placed upon the statute by the labor mediation board requiring determination of the majority of the group as of the date of filing was correct.

We believe that supervisory employees were properly excluded from the "group" of teachers by the board. The basic notion of a "group" or unit suitable for bargaining or mediating employee grievances is that of unity of interests. See 2 Teller, Labor Disputes and Collective Bargaining, § 350; *Triplett Electrical Instrument Co.,* 5 NLRB 835, enforced as modified, *National Labor Relations Board* v. *Triplett Electrical Instrument Co.* (CCA 6), 102 F2d 1004.

We might also point out that once its jurisdiction is established, the acts and procedures of the labor mediation board are not generally subject to review in equity. *Gaidamavice* v. *Newaygo Board of County Road Commissioners,* 341 Mich 280. And we note with disapproval the period of almost 2 years which intervened between the issuance of a temporary injunction restraining mediation by the labor mediation board and the ultimate decree entered in Ingham circuit court after hearing on the merits.

Affirmed.   No costs, public questions being involved.

KELLY, SMITH, BLACK, and VOELKER, JJ., concurred with EDWARDS, J.

DETHMERS, C. J., and CARR, J., concurred in result.

KAVANAGH, J., did not sit.